# Appeal of Dickey, et. al.

115    73
f 29 SC ²259

1. A battery of boilers, embedded in brick, stone, and mortar; a furnace chimney or stack, built on firm foundations, and extending up through the roof; the engines, cranes, wire mills furnace trains, and other fixtures, firmly attached, all part of the realty, and all together constituting one plant, are 'part of the building the alterations, additions and repairs to which entitle the parties who furnished the material and labor therefor, to a mechanic's lien.

2. One who fails to file exceptions to the report of an Auditor questioning the correctness of his findings, or claiming the existence of facts which he alleges the evidence would have warranted him in finding, cannot except to the report on these grounds on an appeal to the Supreme Court. It is not the province of that court to examine the testimony in search of facts if any there be, which should have been found by the Auditor, and incorporated in his report.

3. A mechanic's lien filed for "construction and erection, alteration of, and addition to," a building when the claim is for alterations, additions and repairs, is not vitiated by the words, "erection and construction." *Utile per inutile non vitiatur.*

November 16th, 1886.   Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  MERCUR, C. J., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Allegheny county:* Of October Term 1886, No. 215.

Appeal by O. C. Dickey and W. A. Shaw, judgment lien creditors of the Siemens Anderson Steel Company, from a decree of said court distributing the fund arising from the sheriff sale of the steel mills of said company to the mechanics' lien, creditors of said company, filed for alterations, additions and repairs to said mills.

The court appointed Archibald McBride, Esquire, Auditor, to make distributions of said fund.   The question before him was, whether the mechanics' lien creditors, who were prior lien creditors in point of time to the judgment lien creditors, should participate in the distribution; the judgment lien creditors claiming that the work and material furnished by them in the alterations, additions and repairs of the steel plant of the said company, did not entitle them to a lien.   The Auditor reported *inter alia:*

Your Auditor is of the opinion that such alterations, additions and repairs were made to the building and motive power, which rendered new machinery and alterations in the old machinery necessary, as will entitle most of the mechanics' lien claimants to a lien under Act of May 1st, 1861, P. L., 550, Purdon, 1161.

[Appeal of Dickey et al.]

.Your Auditor is of opinion that it would be "sticking in the bark," to say that a battery of boilers embedded in brick, stone and mortar, a furnace chimney or stack 48 feet high, built on firm found ationand extending up through the roof, the engines, cranes, furnaces, wire mills, trains and other fixtures firmly attached, and all part of the realty, and all together constituting one plant, are no part of the building, the word building meaning only the iron-clad frames and sheds which cover the plant.

He therefore reported distribution to the mechanics' lien creditors, and the remainder of the fund to the judgment lien creditors in the order of their priority. The appellees were not reached in the distribution. They accordingly filed exceptions to such distribution. These exceptions were dismissed, and the report confirmed. They thereupon took this appeal, and assigned for error the decree of the court in dismissing their exceptions and confirming the report. All other facts in the case sufficiently appear in the opinion of the Supreme Court.

*George Shiras, Jr.*, for appellants.—This case falls within the decision of the court in Haslett *v.* Gillespie, *et al.*, 14 Norris, 371, where it was held that where new machinery is furnished for and placed in an old mill, the party supplying the same is not entitled to a mechanics' lien against the building : Ely *v.* Wren, 9 Norris, 145. A mechanics' claim for work done and materials furnished in and about the erection, construction, improvement, and fittting up of the said buildings for the use for which they were constructed will not sustain a lien for repairs and additions : Wetmore's Appeal, 10 Norris, 276 ; Rynd *v.* Bakewell, 6 Norris, 468.

And, again, the lien is filed against the entire premises, whereas it should have been specified against the erection for which the floor-plates were furnished, to wit: the "wire mill and blooming mill " : Wharton Bros. *v.* Douglas, 11 Norris, 66.

The judgment upon the *scire facias* issued by Riddle is not even *prima facie* evidence as against the other creditors.

On a question of distribution of the proceeds of a sheriff's sale, each claimant must establish his claim by proof as against the other : Dempel's Estate, 1 Pearson, 213.

The lien of Robinson, Rees & Co. is filed for " construction and erection, alteration of and additions to " the building in question. It cannot therefore be maintained.

*Thomas Mellon* (*J. S. Strickler* with him) for W. H. Riddle, one of the appellees.

*George B. Gordon* (*John Dalzelle* with him), for Robinson, Rees & Co., one of the appellees.

There can be no question but what these items, covered by our lien, became, both in fact and in contemplation of law, part of the building: Schenk v. Uber & Tees, 31 P. F. S., 34; Voorhees v. Freeman, 2 Watts & S., 116: Heaton v. Findlay, 2 Jones, 304; Gray v. Holdship, 17 S. & R., 413; Morgan v. Arthurs, 3 Watts, 140; Wademan v. Thorp, 5 Watts, 115; Schenk v. Uber & Tees, 31 P. F. S., 34; Parrish & Hazzard's Appeal, 2 Norris, 111.

This being so, a lien will lie under the Act of May 1, 1861, P. L, 550.

It is argued that our lien is invalid because it is filed for "the erection and construction of the buildings, and the repairs, alterations thereof and addition thereto." We do not deny that it is law as stated in the cases cited by them, that if you file a lien for erection you cannot recover for repairs, because you have made no claim therefor, and there is a fatal variance between the *allegata* and the *probata*. But it is just as true that if you declare on both, you can recover on whichever you prove. The court will treat the rest as surplusage: Fisher v. Rush, 21 P. F. S., 40; Appeal of Paul Faust, 2 Pennypacker, 199.

Mr. Justice STERRETT delivered the opinion of the court, January 3d, 1887.

Appellants are not in a position to question the correctness of the learned auditor's findings of fact, or to claim the existence of facts which they allege the testimony would have warranted him in finding, for the reason that they have not excepted to his report on either of these grounds. It is not our province to examine the testimony in search of facts, if any there be, which should have been found by him and incorporated in his report. The burden is therefore on them to show that, upon the facts set forth in the Auditor's report, there is manifest error in the decree. This they have failed to do.

After describing the premises against which the mechanics' liens were filed, the improvements thereon, and the relation that each of these sustains to the others, as essential parts of the plant operated by " The Sieman's-Anderson Steel Company," the Auditor finds that, in July, 1881, the corporation " in contemplation of a second train of rolls and increased capacity, and not having sufficient power, determined to put in four new boilers, which, with the four old ones, made a battery of eight boilers. This was done by changing the position of the old boilers from parallel with the " Rod Mill," and placing all the boilers at right angles thereto ; the boiler-room and masonry being changed to conform to this new arrangement of

the boilers. The boilers were then used to generate steam to run the whole works."

"In September, 1881, 'Open-Hearth Furnace, No. 2,' and building covering it, a portion of roof of 'Open-Hearth Furnace, No. 1,' and part of the roof of the 'Rod Mill,' were destroyed by fire. The corporation commenced immediately to rebuild the parts destroyed by fire, and to make other alterations, repairs and additions, which are mentioned and described in the mechanics' liens filed therefor."

"After the fire the 'New Hose-carriage House' and a new 'Electric Engine House' were built, and a portion of building used for 'Open-hearth Furnace, No. 2,' was rebuilt." The changes and alterations undertaken with the view of increasing the capacity and power of the mill, and the repairs rendered necessary by the fire, appear to have been both in progress after the fire. The items in claims filed, which were charged before the fire amounted, as found by the Auditor, to $7,110.26, and those charged after the fire to $13,581.43, making in all $20,691.69, the aggregate of mechanics' liens filed. The dates of all the items in the respective claims are between July 1st, 1881, and January 10th, 1882.

It thus appears that prior to the fire extensive alterations and repairs were made for the purpose of increasing the capacity of the mill, and after the fire "other alterations, repairs and additions mentioned and described in the mechanics' liens filed therefor," were made.

After stating what the " Wire Mill," " Open-hearth Furnace " and " Universal Mill " consisted of, etc., the Auditor, in view of what had been done in the way of alterations and repairs to several parts of the plant, came to the conclusion " that there was no such change in the general appearance of the buildings as they were before the fire, as would authorize a lien for a new construction or erection " ; but he found that the alterations, additions and repairs, made to the building and motive power, were such as to render new machinery and alterations in old machinery necessary, and as a whole entitle most of the mechanics' lien claimants to participate in the fund.

In that connection he also came to the conclusion "that it would 'be sticking in the bark to say that a battery of boilers, embedded in brick, stone and mortar, a furnace-chimney or stack forty-eight feet high, built on firm foundation and extending up through the roof, the engines, cranes, wire mills, furnaces, trains and other fixtures firmly attached, and all part of the realty, and all together constituting one plant, are no part of the building, the word 'building' meaning only the iron-clad frames and sheds which cover the plant." In this we

fully concur with the Auditor; and also think he was correct in holding that the alterations, additions and repairs which were made were such as entitled the parties who furnished materials and labor therefor to a lien.

In accordance with his previous conclusions, the Auditor proceeded to consider separately each of the mechanic's claims. Only three of these are involved in this contention.

As to the claim of W. H. Riddle, he finds it is "for cast-iron floor plates which were used for making floors in said plant," amounting to $764.65 with interest from January 17th, 1882.

He further finds that the claim of A. Fulton's Son & Co. is for "pipes, gas fixtures, valves, brass steam and gas fittings, and other machinery and materials, and work done on the same, the greater part of which, $1,295.24, was for new machinery, rendered necessary by change in the plant; $5.50 for repairs, and $200.83 for alterations.

He also finds the claim of Robinson, Rea & Co. is a joint and several apportioned one for materials furnished to "Wire Mill" from July 18th to December 28th, 1881, $1,556.20; to "Open-hearth Furnace," from August 13th to December 31st, 1881, $696.67; to "Universal Mill," from July 2d, 1881 to January 3d, 1882, $4,971.78. He further finds that these materials consisted of brass fittings, shafting, furnace plates, damper and frames for furnace stack, rollers, plates and other articles furnished respectively to the wire mill, and other parts of the plant, and for work and labor in putting them in their proper places.

While the learned Auditor is perhaps not as explicit as he might have been, we understand him to mean that the materials furnished and work done by each of the respective lien claimants above mentioned, were done and furnished in and about the alterations, additions and repairs mentioned in previous part of his report, and for which he concluded, as we think rightly, that the respective claimants were entitled to a lien.

There is no merit in the objection to the phraseology of Robinson, Rees & Co.'s lien. The words "erection and construction" do not vitiate the lien. They may well be treated as surplusage. *Utile per inutile non vitiatur.*

As already intimated all the essential conclusions of the learned Auditor appear to be correct, and hence there is no error in the decree.

> Decree affirmed and appeal dismissed at the costs of appellants.