## APPEAL OF GEORGE NAUMAN, EXECUTOR.

116 505
f 29 SC ¹260

APPEAL FROM THE ORPHANS' COURT OF LANCASTER COUNTY.

Argued May 20, 1887—Decided June 1, 1887.

1. Facts found by an auditor and approved by the court below will not be disturbed except for manifest error.

2. Two or three days before the death of H., he directed that money be brought to pay a note he owed to his wife, which note would be found in his safe. No note was found. *Held*, that this fact should be considered with other facts and circumstances, as evidence tending to show H's indebtedness to his wife.

3. Although evidence adduced may have been given a special effect in a former proceeding, yet it is to be considered independently of that fact in its pertinency to the issue in which it is offered.

Before MERCUR, C. J., TRUNKEY, STERRETT, GREEN and CLARK, JJ.; GORDON and PAXSON, JJ., absent.

No. 43 July Term 1887, Sup. Ct.

This cause in the court below originated in the distribution by an auditor of the balance in the hands of the administrators of Amos S. Henderson, deceased, who died insolvent.

Mrs. Anne Franklin died in 1853. By a codicil to her will she directed her executors to retain three thousand dollars of her estate, in trust, to pay the annual interest and income thereof to her two daughters, Anne E. and Elizabeth R., during their lives, and to the survivor of them during her life, and after the death of the survivor, to divide the same among her surviving children and the issue of any then dead.

At the time of Mrs. Franklin's death her two daughters were unmarried. Subsequently, in 1861, Anne married Amos S. Henderson, and her sister Elizabeth, after that, lived with her. After Anne's marriage, the $3,000 of trust money was invested in U. S. 7-30 Treasury notes, which were subsequently delivered by the executors to Mrs. Henderson and her sister Elizabeth, who gave the following receipt:

Received Lancaster, May 1, 1865, from the executors of the will of Anne Franklin, deceased, three $1,000 7 3-10 Treasury notes, which they invested under the provisions of said will, and the interest of which is to be retained by us, the bonds to be returned to the said executors by the survivor of us as directed by said will.

ANNE E. HENDERSON,<br>
ELIZABETH R. FRANKLIN.

After giving the above receipt, Elizabeth R. Franklin died in 1865. In August, 1881, Mrs. Henderson and her husband gave the executors another paper which after reciting the above receipt proceeded as follows:

And whereas Elizabeth R. Franklin is now deceased, and the investment of the three thousand dollars in 7-30 Treasury notes has been changed; now we the said Anne E. Henderson and her husband Amos S. Henderson, acknowledge that we have in our hands the sum of three thousand dollars, the interest on which is to be retained by said Anne during her life, and the principal sum upon her decease is to be returned to the said executor, to be distributed according to the will of Anne Franklin, deceased.

Witness our hands this fifth day of August, A. D. 1881.

ANNE E. HENDERSON,<br>
AMOS S. HENDERSON.

Auditor's Report.

Amos S. Henderson died on the 13th of January, A. D. 1885, intestate and insolvent.

Anne E. Henderson died in June, 1885, leaving a will, by which, after bequeathing sums of money and specific articles to divers persons, she gave the remainder of her estate to Mrs. Clara A. Franklin, and appointed George Nauman, Esq., the executor thereof. After her death the trust fund could not be found. She left an estate which was clearly shown to have been derived from another source; the whole amount for distribution having come from a policy of life insurance.

Upon the distribution of Mrs. Henderson's estate in the Orphans' Court of Dauphin county, George M. Franklin, administrator *d. b. n. c. t. a.* of Anne Franklin, deceased, claimed before the auditor the sum of $3,000, being the trust funds that came into her hands in May, 1865. The auditor allowed the claim, but upon exceptions to his report, the Orphans' Court of Dauphin county awarded the whole residuum of the estate to the residuary legatee. On appeal to the Supreme Court it was held that the facts revealed a wrongful conversion of the trust fund by Mrs. Henderson and that she was liable therefor in damages, and that therefore the appellant was entitled to recover; and the decree of the court below was reversed: Franklin's Appeal, 18 W. N. C. 245.

George Nauman, Esq., executor of the will of Mrs. Henderson, then paid the said sum of $3,000 to the administrator *d. b. n. c. t. a.* of the estate of Anne Franklin, deceased, and now claims to recover as a creditor of the estate of Amos S. Henderson, a dividend on the said sum of $3,000.

This claim was opposed by Dr. B. Leaman, and other creditors, and the auditor in making a distribution of the estate of Mr. Henderson, having found the foregoing facts, proceeded with reference to the claim of Mr. Nauman, executor of Mrs. Henderson, as follows:

Mr. Nauman, in further support of his claim, called William Henderson, who testified:

I am the son of Amos S. Henderson, deceased; two or three days before my father died he asked me if we had plenty of currency at the bank, and if we had to bring him three thousand dollars. I asked him what it was for. He said I would

find in the safe his note to my mother for that amount. I didn't find the note, nor bring the money. He said it was to pay that note. Nothing ever was paid to her.

Under the evidence submitted in support of the claim, the auditor was constrained to find the fact that the relation of debtor and creditor did not exist between Mr. Henderson and his wife in reference to this claim. All the evidence submitted to your auditor except the declaration or statement of Mr. Henderson to his son William was before the Supreme Court in another proceeding: Franklin's App., 18 W. N. 245. There the court held that Mrs. Henderson was guilty of a wrongful conversion of the trust fund, and held her estate liable in the sum of $3,000 damages. Also that "there is nothing in the case showing that she committed the tort by coercion of her husband." Assuming therefore that Mrs. Henderson had this $3,000 at the time she converted the trust securities, is there sufficient evidence in the statement of Mr. Henderson, two days before he died, to his son, to show that he ever received this money and owed it to his wife?

Before Mr. Nauman as executor can recover this claim, he must prove his right as a creditor with as much certainty and clearness as the wife of Mr. Henderson would have to prove her right as a creditor against her deceased husband's estate, if living. Mr. Nauman as executor is her representative. The principal evidence here is a verbal statement or admission made by Mr. Henderson only two or three days before he died. 1 Greenl. Ev. § 200, says: "Such admissions should be received with great caution. The evidence, consisting as it does in mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens that the witness by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party really did say. But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature."

There is nothing in Mr. Henderson's admission tending to show a liability except in the part in which he says, ".it was

to pay that note." The note was not found. Mr. Henderson said it was in the safe. It was not there. There is no evidence that any such note ever was made. The verbal admission before us is insufficient to justify the inference. If the note had been found, we might have known what the note was given for, when, and all about it. The note not being found where Mr. Henderson says it was, shows conclusively that he was mistaken in the most material part of his admission or statement. To ascertain the full effect of a verbal admission, the whole, that is, every part of that admission, must be considered together. One part may be favorable and another part unfavorable, and both parts in direct contradiction of each other. There is no evidence to show what money Mr. Henderson ever borrowed from his wife, if he ever borrowed any at all. Though Mr. Henderson was unfortunate in business, he was always respected as an intelligent and good citizen, one who was familiar with customs and manner of doing business.

In Hause v. Gilger, 52 Penn. St. 412, Justice AGNEW in his opinion said: "It is necessary for the peace of families and the protection of estates that one standing in the confidential relation of wife should prove her right as a creditor with clearness." "When there is a balancing question as to whether the money alleged to have been lent by the wife to her husband came from her means or his, it is not error in the court to take the question from the jury."

If, on the other hand, the facts were found that Mr. Henderson and his wife converted these trust securities, and he used the money, there could be no recovery, for the reason that there is no contribution between tort-feasors: The North Penn. R. Co. v. Mahoney, 57 Penn. St. 187.

This claim is therefore disallowed.

To this report of the auditor exceptions were filed by various claimants, including Mr. Nauman, as executor of Mrs. Henderson. The court, D. W. PATTERSON, J., overruled all the exceptions and confirmed the report, whereupon Mr. Nauman took this appeal.

*Mr. D. G. Eshleman* (with him *Mr. George Nauman*), for the appellant:

As there was no conflict of evidence, there has not been

such a finding of facts by an auditor, affirmed by the court below, as carries with it the effect of a verdict by a jury.

1. The auditor, in founding an argument on the fact that the claim was in the Supreme Court before, overlooks the question that was then pending. The question then was not whether there was a contractual relation between Mrs. Henderson and her husband. See Franklin's App., 18 W. N. 245.

2. The statements made by Mr. Henderson to his son William were not admissions. But an admission deliberately made and precisely identified is often evidence of the most satisfactory character: 1 Greenl. Ev., § 200. The statements prove a declaration that Mr. Henderson had given a note. That the note was not found in the safe is not conclusive that it was not there or that it did not exist.

On August 5, 1881, Mr. and Mrs. Henderson had these $3,000. They both died in 1885; she having no money or estate of any kind, he having a large amount of money and other property; and with these facts we have his declaration that he owed his wife $3,000.

3. As to non-contribution between tort-feasors, it is sufficient that this court has said that there was nothing to show that Mrs. Henderson made the conversion by the coercion of her husband, and the evidence now shows that he obtained the money from her and desired to repay her.

*Mr. William Leaman*, for the appellees:

Not as an inference, or as a conclusion upon a mixed matter of law and fact, but as a result of a direct consideration of the testimony, according to its weight and preponderance, the auditor found that the appellant's claim was not sustained. and rejected it. His finding has the effect of a verdict of a jury.

1. The voluntariness of Mrs. Henderson's deed would require proof, and could not be presumed. Having merely the fact that she delivered the bonds to her husband, she would be shown to be acting in his presence, and the presumption of coercion would arise: Franklin's App., 18 W. N. 245. And if there were a joint conversion, still it is true, that as matter of law, there is no contribution among tort-feasors: North Penn. R. Co. v. Mahoney, 57 Penn. St. 187.

OPINION, MR. JUSTICE TRUNKEY:

On August 5, 1881, Amos S. Henderson and Anne E. Henderson gave to the executor of the will of Anne Franklin, deceased, an acknowledgment that certain Treasury Notes to the amount of three thousand dollars had been changed, and that they had in their hands the sum of three thousand dollars, the interest thereof to be retained by said Anne during her life, and at her death the principal to be returned to the executor. That paper is silent as to when or by whom the Treasury Notes had been changed or converted, but it bound Amos S. Henderson for return or payment of the money.

Henderson was a banker, doing a large business, and the learned judge of the Orphans' Court says, " his creditors were legion ; some two thousand and one hundred presented their claims to the auditor for payment." He died January 13, 1885, and his wife died in June following. She left no estate save that derived from insurance on the life of her husband. There is not a tittle of evidence that Mrs. Henderson was engaged in business, or in any way spent or lost money. The reasonable inference from the facts already mentioned is that she put the money into the care of her husband to be paid when required for distribution by the executor.

Two or three days before Henderson died he told his son to bring from the bank three thousand dollars to pay a note he had given to his wife ; but the son, not finding the note, did not take the money to his father as he had been requested. There is no other evidence that such note had been given to Mrs. Henderson. Treating the son's testimony by itself " the auditor was constrained to find the fact that the relation of debtor and creditor did not exist between Mr. Henderson and his wife in reference to this claim." And if it was proper to so treat it, his finding would not be reversed, for facts found by an auditor and approved by the court below will not be disturbed except for manifest error.

But the son's testimony should be considered in connection with Henderson's written acknowledgment or receipt, and all the circumstances. This is so reasonable that in the appellees' argument it is said: " Further, Amos S. Henderson, at the time this conversation occurred with his son, was in the last hours of his life, after having passed through a long and

enfeebling illness. In his debility he may have transiently recollected something of his relations to these trust funds, and vaguely recalled the receipt of August 5, 1881, as a note given to Mrs. Henderson." It may well be that he was mistaken as to the giving of a note, but not as to his obligation to pay the money, as evidenced by the receipt. In his last illness he desired to pay the money to his wife, the same he had obligated himself to pay at her death. It was money owing to the estate of Anne Franklin, deceased, and if he suffered it to be collected from his wife, or from her estate, his contract was broken. Almost his last wish was to protect her from annoyance by paying the money.

This court held in Franklin's Appeal, 18 W. N. C. 245, that Mrs. Henderson was liable because of her wrongful conversion of the Treasury Notes placed in her hands in trust. There was nothing to show that her husband was a party to the tort, nor was there question as to his liability to anybody. The receipt was pertinent evidence in that case touching the alleged conversion. The auditor remarks that all the testimony, except what Mr. Henderson said to his son, was before the Supreme Court, where it was held that Mrs. Henderson was guilty of conversion of the trust fund ; and he therefore considers whether there is " sufficient evidence in the statement of Mr. Henderson, two days before he died, to his son, to show that he ever received this money and owed it to his wife." This was a grave mistake. It mattered not in the disposition of Franklin's Appeal whether Henderson had borrowed the money from his wife, or whether Mrs. Henderson had retained it in her own custody. Had all the evidence, properly or improperly, been before the court in the hearing of that case, all pertinent evidence must be considered in this. Upon the whole of the evidence pertinent to the inquiry whether Henderson received the money and owed it to his wife, the question must be answered. It is plain that the auditor's finding was based on a fragment. He also put stress upon her conversion of the trust securities as inconsistent with a loan of the money to her husband. But after conversion there was nothing in the way of a loan to him more than to another person.

The evidence impels us to the conclusion that Amos S.

Henderson was debtor to his wife for said sum of three thousand dollars, and that the appellant is entitled to share *pro rata* in the distribution with other creditors.

> Decree reversed, at the costs of the appellees, and record remitted that distribution of the fund be made in accord with the opinion of this court.