# Johnson's Estate.

*Appeals—Auditor's report—Exceptions.*

Where one fails to file exceptions to the report of an auditor impeaching the correctness of his findings, or alleging the existence of facts which the evidence should have induced him to find, he cannot except to the report on these grounds on an appeal.

*Husband and wife—Murder of wife—Distribution of estate—Decedents' estates.*

The fact that a husband has murdered his wife will not prevent him from inheriting her estate under the intestate laws.

*Auditors—Findings of fact—Survivorship of husband or wife.*

The fact that a husband survived the death of his wife, found by an auditor and approved by the court below, will not be disturbed except for manifest error.

Statement of Facts—Auditor's Report below. [29 Pa. Superior Ct.

Argued May 11, 1905. Appeal, No. 200, April T., 1905, by R. L. Haslet, guardian of Andrew J. and Ellsworth B. Armstrong, from decree of O. C. Lawrence Co., Sept. T., 1904, No. 37, dismissing exceptions to auditor's report in Estate of Emma Viola Johnson. Before BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of Charles E. Mehard, Esq., auditor.

The auditor found the facts to be as follows :

Your auditor, from the testimony taken, notes of which are filed herewith, finds the following facts :

1. That Emma Viola Johnson was the wife of Leonard M. Johnson ; that they lived together after they were married until some time in March, 1903 ; that they separated and divided up their property ; Emma Viola Johnson went one place and Leonard M. Johnson another. From the testimony the auditor is of the opinion that Emma Viola Johnson and Leonard M. Johnson separated by agreement ; there is no testimony that he deserted her, and the fact that they divided their goods and effects leads the auditor to this conclusion. After they separated they had some trouble and Emma Viola Johnson had her husband, Leonard M. Johnson, arrested for assault and battery and surety of the peace. This happened on June 29, 1903, almost three months after they had separated. Leonard M. Johnson was held for court, as the transcript filed herewith shows. There is no evidence as to what was done with the case by the court of Forest county. That they did not live together after their separation in March, 1903.

2. Emma Viola Johnson made her home with Mrs. Clara Longstreth after her separation from her husband (see testimony, page 42) ; that on Tuesday, December 15, 1903, about 11 o'clock A. M., Leonard M. Johnson went to the house of Mrs. Clara Longstreth, where his wife was staying, and after greeting his wife and Mrs. Longstreth (see testimony, page 44), he talked with his wife. They quarreled and Leonard M. Johnson pulled a revolver and shot his wife, the bullet grazing her temple. He shot her in the neck, or back of the ear, and the bullet came out of her cheek. He went out of the house and came back in again and shot his wife, Emma Viola Johnson, a

255, (1905).]          Auditor's Report below.

third time, the bullet taking effect above the ear on the side of the head (see testimony, page 44). Emma Viola Johnson died as a result of her wounds on Tuesday, December 15, 1903, at 12 o'clock M.

3. That about 3 o'clock on the same day, viz.: Tuesday, December 15, 1903, Leonard M. Johnson was found dead in the woods a short distance from the Longstreth residence, but his body was still warm and limp (see testimony, page 71). The weather was very cold, thermometer about the zero mark, and the ground covered with snow.

4. That Leonard M. Johnson died by his own hand between 1:30 and 2 o'clock, Tuesday, December 15, 1903. The testimony of Dr. J. M. Martin, page 73, as well as the testimony of Dr. A. I. Hoon, on page 80, in which both say that after listening to the testimony of Sheriff Noblitt, who found the body, as to the condition the body was in, the temperature, etc., that they would say that he had been dead from one to one and one-half hours. Dr. Hoon said not less than one hour nor more than one hour and a half; that, counting back from the time the body was found, which was about 3 o'clock, would fix the time between 1:30 and 2 o'clock P. M.

5. The principal fact in this case to determine is, which died first, Emma Viola Johnson or Leonard M. Johnson? This must be determined from the testimony, and the auditor finds that Emma Viola Johnson died at between 11:20, the time of shooting, and 12 o'clock. At any rate, she was dead at 12 M. Leonard M. Johnson died between 1:30 and 2 o'clock. Consequently he was living after the death of his wife, Emma Viola Johnson. The auditor reaches this conclusion from the testimony of Mrs. Clara Longstreth as to the time of the death of Emma Viola Johnson, and reaches the conclusion as to the time of the death of Leonard M. Johnson from the testimony of Dr. J. M. Martin and Dr. A. I. Hoon, both reputable physicians of long experience, and giving their testimony after having heard the circumstances as to the finding of the body of Leonard M. Johnson, its condition when found, the surroundings, the cause of death, the condition of the weather, etc., and they gave their opinions from the circumstances as they were related. There is no positive testimony as to the actual time of the death of Leonard

M. Johnson, consequently the auditor has been guided in his finding of the facts by the testimony of those who were experienced in the practice of medicine, and who were more familiar with medical jurisprudence than the auditor. The time of Leonard M. Johnson's death can only be fixed from the circumstances as given in testimony. I also have been guided as to this conclusion somewhat by the evidence of John C. Offutt (see pages 78 and 79), an undertaker of long experience, and who has had a great many cases of suicides. Taking the particular testimony as above stated, and the testimony as a whole, the auditor cannot come to any other conclusion than that Emma Viola Johnson died before her husband, Leonard M. Johnson, intestate and without issue, and that Leonard M. Johnson afterward died intestate and without issue, and that Sarah Eastlick, his mother, is his only heir at law, his father being dead.

*T. F. Ritchey*, with him *Charles Martin*, for appellant.—With no circumstances appearing which survive the other, the right to the estate will be determined as if death occurred at the same time : Willbor's Case, 51 L. R. A. 863 ; Russell v. Hallett, 23 Kan. 276 ; Clymer's Estate, 16 W. N. C. 36.

An appellate court does not hesitate to reverse a judgment entered upon a verdict based upon insufficient evidence, and the same is true as to an auditor's finding of fact : Fehl's Estate, 13 Pa. Superior Ct. 601 ; Fiscus's Estate, 13 Pa. Superior Ct. 615 ; Selser's Estate, 8 Pa. C. C. Rep. 254; Reading Iron Works, 150 Pa. 369; McAleer v. McMurray, 58 Pa. 126 ; Cake's App., 110 Pa. 65 ; Hindman's App., 85 Pa. 466.

*Virgil L. Johnson*, with him *Wylie McCaslin*, for appellee, cited : Carpenter's Estate, 170 Pa. 203.

OPINION BY HENDERSON, J., October 9, 1905 :

Emma Viola Johnson was shot by Leonard Johnson, her husband, on December 15, 1903, from which wound she died about half an hour later. The shooting occurred about fifteen minutes after eleven o'clock in the forenoon at the house of Orlando Longstreth, where she was staying. When the shooting occurred Mrs. Longstreth ran to one of the neighbors

working in a field, who returned to the house with her.

When they arrived Johnson had disappeared. This was about twenty-five minutes past eleven. At about three o'clock or later on the afternoon of the same day the dead body of Johnson was found at a place about 1,700 feet from the Longstreth house with a gunshot wound in the head under circumstances clearly indicating that he had killed himself. Emma Viola Johnson died intestate and without issue, and the present controversy grows out of the distribution of her personal estate. The appellant presents three objections to the action of the court below : (1), Leonard Johnson deserted his wife, and therefore forfeited his right to inherit her estate; (2), having murdered his wife, public policy forbids that he inherit any part of her estate ; (3), Emma Viola Johnson survived her husband, and therefore the estate descended to her heirs, of whom the appellant is guardian.

The auditor found that there was no evidence of the desertion of his wife by Leonard Johnson. No exception was filed to this finding, and the appellants cannot now be heard to question its conclusiveness. Where one fails to file exceptions to the report of an auditor impeaching the correctness of his findings or alleging the existence of facts which the evidence should have induced him to find, he cannot except to the report on these grounds on an appeal: Dickey's Appeal, 115 Pa. 73. We have examined the evidence on this subject, however, and find that the action of the auditor was fully warranted by the testimony.

The second objection is answered by Carpenter's Estate, 170 Pa. 203. Nothing could be profitably added to the clear and decisive opinion in that case.

The evidence shows that the wife died about twelve o'clock. Mrs. Longstreth testified that she died at twelve o'clock, but it appears from other parts of her evidence that she discovered at twelve o'clock that her pulse had ceased to beat. Just how long before she had made an examination of the pulse she was not able to state. That Leonard Johnson was alive for some time after he had wounded his wife is apparent from all the evidence. When his body was found it was warm and limp, and two physicians, who appear to have had experience on that subject, testified from the description given as to the

condition of the body when found that he had probably been dead from an hour to an hour and a half. Whether Johnson went directly from the house to the place where his body was found does not clearly appear. The sheriff of the county who made an examination of the premises found tracks which led from the back door nearly opposite the barn. Samuel Stewart, who was on the ground before the sheriff and who accompanied the sheriff in the search for Johnson, said, "We found the tracks down by the barn where he went across the field," and that it was perhaps six or eight rods from the house where he first found the tracks. Assuming that Johnson went directly from the house to the place where his body was found, it does not follow as a necessary conclusion that he killed himself immediately on his arrival at that place, although two of the witnesses examined say that there were no tracks or evidences of movements where he was found. He was apparently sitting at the time he killed himself. The conclusion of the auditor, confirmed by the court below, that Johnson survived his wife, is supported by evidence, and we are not persuaded by the argument of the learned counsel for the appellant that it is not justified by the testimony. Facts found by an auditor and approved by the court below will not be disturbed except for manifest error: Nauman's Appeal, 116 Pa. 505. The burden is on the appellant to satisfy us of the error of the court below, and this he has failed to do.

The decree is affirmed.