40 Wn.2d 850 (1952)
246 P.2d 445
In the Matter of the Estates of JOHN D. DUNCAN and LAURA F. DUNCAN, Deceased.
JOHN D. DUNCAN, JR., Appellant,
v.
ELIZABETH A. SCHOEFFLER, as Administratrix, et al., Respondents.[1]
No. 31938.
The Supreme Court of Washington, Department Two.
July 24, 1952.
J. Edmund Quigley and Anthony Savage, for appellant.
John W. Fishburne, for respondents.
FINLEY, J.
John D. Duncan was killed by his son, John D. Duncan, Jr., on June 3, 1950, in Seattle, Washington. The son pleaded guilty to murder in the second degree, was sentenced to life imprisonment, and is now in the state penitentiary at Walla Walla.
The question in this case is whether the son, convicted of murdering his father, can inherit the father's estate under the statutes of descent and distribution of the state of Washington.
This case was submitted on an agreed statement of facts. The trial court, apparently relying upon In re Tyler's Estate, 140 Wash. 679, 250 Pac. 456, 51 A.L.R. 1088, held that John Duncan, Jr., the convicted murderer of his father, could not inherit from the latter under our above-mentioned statutes. The son has appealed.
Our research shows that the question here involved has been disposed of in other jurisdictions in three different ways, as follows:
*851 1. The heir who murdered his ancestor has been permitted to inherit the ancestor's estate because neither the statutes of descent and distribution nor other state statutes clearly prohibit such a result.
Hagan v. Cone, 21 Ga. App. 416, 94 S.E. 602; Wall v. Pfanschmidt, 265 Ill. 180, 106 N.E. 785; Kuhn v. Kuhn, 125 Iowa 449, 101 N.W. 151; McAllister v. Fair, 72 Kan. 533, 84 Pac. 112; Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487; Gollnik v. Mengel, 112 Minn. 349, 128 N.W. 292; Shellenberger v. Ransom, 31 Neb. 61, 47 N.W. 700, reversed in 41 Neb. 631, 59 N.W. 935; Wilson v. Randolph, 50 Nev. 371, 261 Pac. 654; Owens v. Owens, 100 N.C. 240, 6 S.E. 794; Deem v. Milliken, 6 Ohio Circ. Ct. 357, affirmed 53 Ohio St. 668, 44 N.E. 1134; Johnson's Estate, 29 Pa. Super. 255; Carpenter's Estate, 170 Pa. 203, 32 Atl. 637; Hill v. Noland, 149 S.W. (Tex. Civ. App.) 288; Murchison v. Murchison, 203 S.W. (Tex. Civ. App.) 423; Holloway v. McCormick, 41 Okla. 1, 136 Pac. 1111; De Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624; Johnston v. Metropolitan Life Ins. Co., 85 W. Va. 70, 100 S.E. 865, 7 A.L.R. 823.
The courts reaching this first-mentioned result have expressed extreme reluctance in doing so but have felt that arriving at any other result, where the statutes do not clearly prohibit the murderer from inheriting, would require reading an exception into a statute and would constitute judicial legislation regarding a matter essentially within the exclusive prerogative of the state legislature.
2. Other courts have held squarely that a murderer cannot inherit from his victim.
Box v. Lanier, 112 Tenn. 393, 79 S.W. 1042, 64 L.R.A. 458; Perry v. Strawbridge, 209 Mo. 621, 108 S.W. 641; In re Santourian's Estate, 125 Misc. 668, 212 N.Y.S. 116; Estate of Wilkins, 192 Wis. 111, 211 N.W. 652, 51 A.L.R. 1106; Garwols v. Bankers Trust Co., 251 Mich. 420, 232 N.W. 239; Slocum v. Metropolitan Life Ins. Co., 245 Mass. 565, 139 N.E. 816, 27 A.L.R. 1517; Weaver v. Hollis, 247 Ala. 57, 22 So. (2d) 525; Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188. (New York has abandoned this position.)
*852 A number of these courts have frankly said that it is simply too abhorrent to acceptable moral and ethical values to permit a murderer to benefit from his wrong by inheriting from his victim. They assert that good morals and public policy would be against such a result. Other courts in this second general category have found an implied legislative intent (or have read into the statutes of descent and distribution an exception) to deny the murderer the fruits of his evil doings.
3. Still other courts have held that legal title passes to the murderer but equity principles prevent the wrongdoer from profiting by his misconduct, and require that title be held by him as constructive trustee for the person wronged or the latter's other heirs.
Ellerson v. Westcott, 148 N.Y. 149, 42 N.E. 540; Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, as explained in Ellerson, supra; Bryant v. Bryant, 193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100; Van Alstyne v. Tuffy, 103 Misc. 455, 169 N.Y.S. 173; Barnett v. Couey, 224 Mo. App. 913, 27 S.W. (2d) 757.
Only a relatively few jurisdictions have been willing to resort to the somewhat fictitious application of equitable principles implicit in this last method of disposition or solution of the problem.
In the instant case, (a) respondents contend that our statutes of descent and distribution constitute a codification of the common law and that, at common law, a murderer could not inherit from his victim; (b) respondents further rely upon the Tyler case, supra.
Our research throws very great doubt upon respondents' theory as to the common law relative to our problem at hand. In 29 Mich. L. Rev. 745, the writer observes that there do not seem to have been any decided cases in the early common law on this question. However, this statement is foot-noted with the reference, "But see Wharton on Homicide, 3d Ed., § 665." Wharton says that to permit a murderer, or one claiming under him, to be benefited by his crime would be against public policy, citing Cleaver v. *853 Mutual Reserve Fund Life Association (1892), 1 Q.B. 147. Further, he says that the common-law right of succession by descent does not operate in favor of one who willfully takes the life of his ancestor, nor against any one claiming through him, and cites Box v. Lanier, 112 Tenn. 393, 79 S.W. 1042, 64 L.R.A. 458. However, these cited cases can hardly be called "early common-law cases."
Ames states that as far back as the time of Lord Hale, in King's Attorney v. Sands, Free. C.C. 129, Hardres 405, 488 s.c., it was taken for granted by counsel and court that the interest of a cestui que trust descended to his only brother, who had killed him. In view of the brother being attainted of murder and therefore having no heirs, the trust was claimed by the crown as feudal lord. The claim was not allowed, as there was no escheat of equitable interests; but, there being no one who could enforce the trust, the trustee (who was the father of the two brothers) held the legal title for his own benefit. See 36 Am. Law Reg. 225, 229.
By the civil law, the legal title passed to the criminal and was afterward confiscated by the state. 29 Mich. Law Rev. 745; 36 Am. Law Reg. 225; 8 Harv. Law Rev. 170; Buckland, Textbook of Roman Law 317. In modern continental law, the murderer is simply excluded from the succession without forfeiture to the state. 29 Mich. Law. Rev. 745; 5 Baudry-Lancantinerie, Traite Du Droit Civil 221; 5 Dernburg, Das Burgerliche Recht 27.
If the common law recognized no prohibition as to a murderer taking from his victim under the applicable laws of descent and distribution, it follows that the contention regarding the Washington legislature codifying the common law and thereby intending to prohibit a murderer from inheriting is illogical and without merit and should not be given further credence here.
The Tyler case related to our homestead statutes. It did not involve our statutes of descent and distribution. It should be distinguishable on that basis. If not, we now feel that the situation involved in the Tyler case has been satisfactorily covered by enactment of legislation prohibiting *854 a spouse from claiming homestead interests when the claimant murdered his marital partner.
We do not think it can be inferred from the latter enactment that the legislature intended to imply a similar prohibition or that one should be read into the general statutes of descent and distribution.
[1] Although the result shocks our conscience (and well it should), we believe that the existing applicable statutes can only be construed to permit appellant to inherit his father's estate. A result more consistent with acceptable standards of common decency must await action by the state legislature, clearly providing that a murderer cannot inherit from his victim under our statutes of descent and distribution, and, perhaps for that matter, under a will probated in this state. We have no doubt the legislature will take prompt action so the result we are forced to reach in the instant case may be avoided in the future.
The judgment of the trial court is reversed.
SCHWELLENBACH, C.J., HILL, HAMLEY, and OLSON, JJ., concur.
October 14, 1952. Petition for rehearing denied.
NOTES
[1] Reported in 246 P. (2d) 445.