[No. 43743.    En Banc.    October 30, 1975.]

CERTIFICATION FROM FEDERAL COURT
IN
NEW YORK LIFE INSURANCE COMPANY, *Plaintiff*, v. DONNA L. JONES, ET AL, *Defendants*.

*Kempton, Savage & Gossard* and *David W. Gossard*, for defendant Donna L. Jones.

*W. Wesselhoeft*, pro se, and *Ferguson & Burdell* and *James P. McGowan*, for defendants Candace B. Jones et al.

ROSELLINI, J.—As a result of the circumstances surrounding the death of Stanley Jones, his wife was charged with second-degree murder in an information filed by the King County prosecutor. The original information charged that Donna Jones

> with a design to effect the death of one Stanley Foster Jones, a human being, willfully, unlawfully and feloniously did then and there shoot at, toward, and into the body of the said Stanley Foster Jones

with a firearm, thereby inflicting mortal wounds which caused the death of Stanley Jones. On the fifth day of the trial, an amended information was filed by the prosecutor's office. While the charge remained second-degree murder, the amended information eliminated the language which alleged a willful and unlawful shooting with a design to effect the death of the victim and substituted an allegation that the defendant "while engaged in the commission of a felony, to wit: assault in the second degree" caused the death of Stanley Jones.

Once the amended information had been filed by the prosecutor's office, Donna L. Jones pleaded guilty to the charge of second-degree murder.

Thereafter, the New York Life Insurance Company commenced this interpleader action and paid into court the proceeds of an insurance policy on the life of Jones. Cross claims were filed by Donna Jones, the primary beneficiary and by the secondary beneficiaries, a child and a stepchild of the insured, the latter acting through their guardian ad litem. The guardian ad litem and the primary beneficiary each moved the court for summary judgment, claiming a right to such judgment upon the stipulated facts recited above.

Pursuant to RCW 2.60 the federal court certified the

question to this court for resolution, since it requires an interpretation of Washington statutes.

RCW 11.84.100[1] reads as follows:

> (1) Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid instead to the estate of the decedent, unless the policy or certificate designate[s] some person other than the slayer or his estate as secondary beneficiary to him and in which case such proceeds shall be paid to such secondary beneficiary in accordance with the applicable terms of the policy.

The question before the court is: Can it be said as a matter of law that a person is a slayer or is not a slayer within the definition of that term contained in RCW 11.84.010, if that person has pleaded guilty to a charge of second-degree felony murder, the felony being assault in the second degree?

If the primary beneficiary is a slayer within the meaning of RCW 11.84.010(1), she is not entitled to the proceeds of the policy. On the other hand, if her plea of guilty to the crime charged demonstrates conclusively that she is not a slayer within the meaning of the statute, she may receive the proceeds.

"Slayer" is defined in RCW 11.84.010(1) as follows:

> (1) "Slayer" shall mean any person who participates, either as a principal or an accessory before the fact, in the wilful and unlawful killing of any other person.

It will be seen that under the definition of slayer in the statute, before a beneficiary is disqualified from receiving

---

[1]RCW 11.84 was enacted in response to this court's decision in *In re Estate of Duncan*, 40 Wn.2d 850, 246 P.2d 445, 39 A.L.R.2d 473 (1952), holding that a son who murdered his father was not thereby precluded from inheriting his estate. Statutes upon this subject vary in their precise wording and therefore in the interpretations which courts have given them. *See Killing of insured by beneficiary as affecting life insurance or its proceeds*, Annot., 27 A.L.R.3d 794 (1969). It will be seen from this annotation that the beneficiary ordinarily does not lose his right to take the proceeds of a policy unless he intentionally killed the insured.

the proceeds of a policy, it must be shown not only that he participated in the killing of the insured, but that the killing was done willfully and unlawfully.

It is obvious that the killing was done unlawfully and the sole question is: Do the facts stated in the information tell us whether it was done willfully?

■ Words of a statute not particularly defined are to be given their ordinary, everyday meaning. If the legislature uses a term well known to the common law, it is presumed that the legislature intended it to mean what it was understood to mean at common law. *State v. Dixon*, 78 Wn.2d 796, 479 P.2d 931 (1971); *Fransen v. Board of Natural Resources*, 66 Wn.2d 672, 404 P.2d 432 (1965).

■ Willfully means intentionally and designedly. *State v. Russell*, 73 Wn.2d 903, 442 P.2d 988 (1968); *State v. Spino*, 61 Wn.2d 246, 377 P.2d 868 (1963); *Webster's Third New International Dictionary* 2617 (1968). *See* 45 *Words & Phrases* 313-28 (perm. ed. 1970). The authorities collected there show that this meaning attaches to the word, whether it is used in civil or criminal statutes.

The primary beneficiary was first charged with the intentional murder of her husband. Had she pleaded guilty to that charge, there would be no question but that she was precluded from taking any benefits under the policy. However, when the charge was amended to allege a violation of the second rather than the first paragraph of the second-degree murder statute, the prosecutor was no longer required to prove that the killing was done intentionally.

RCW 9.48.040 reads, in part:

> The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—
> (1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
> (2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030.

■ Assault in the second degree is defined in RCW

9.11.020. The provisions of this statute require at most proof of an intent to injure or to inflict great bodily harm. Neither second-degree assault nor second-degree felony murder requires proof of an intent to kill. We so held in *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966)[2]

█ Since a charge of second-degree felony murder. (assault in the second degree) can be sustained without proof that the killing was intentionally done, it follows that a plea of guilty to such a charge does not admit that the killing was willful. Thus, the secondary beneficiaries are not entitled to a summary judgment upon a bare showing that the primary beneficiary pleaded guilty to such a charge.

At the same time the plea of guilty does not establish the fact that the killing was unintentional. The question whether there was an intent to kill is simply not at issue in the prosecution. The plea of guilty, therefore, does not resolve the question one way or the other.

If the secondary beneficiaries are to establish their claim to the proceeds, it will be incumbent upon them to show that the primary beneficiary intended to kill her husband when she assaulted him with a weapon. They will, of course, be aided by the presumption that a person is presumed to have intended the usual and ordinary consequences of his acts. *State v. Mays*, 65 Wn.2d 58, 395 P.2d 758 (1964). As we said in *State v. Odom*, 83 Wn.2d 541, 520 P.2d 152 (1974), the trier of the fact is entitled to find an intent to kill from the fact that a defendant fired a weapon at his victim. However, the primary beneficiary has a right to present her evidence, and if she can convince the jury

[2]An annotation in 40 A.L.R.3d 1341 (1971) shows that the majority of courts have held that an assault merges in the killing and cannot be used to support a second-degree murder charge. *See State v. Mosley*, 84 Wn.2d 608, 528 P.2d 986 (1974), where the question whether the holding of *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966), should be reconsidered was raised but was not decided.

that she had no homicidal intent when she assaulted her husband, she will be entitled to the proceeds.

STAFFORD, C.J., and FINLEY, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.