[No. 58932-6-I.  Division One.  December 3, 2007.]

*In the Matter of the Estate of* PAMELA L. KISSINGER.

JOSHUA HOGE, *Appellant*, v. LEONARD HOSS, *as Personal Representative, Respondent.*

*Jean A. O'Loughlin*, for appellant.

*Mark Leemon* (of *Leemon + Royer, PLLC*), for respondent.

¶1 GROSSE, J. — Our state's slayer statute has been interpreted to not prevent a nonwillful slayer from inheriting. However, a slayer found not guilty by reason of insanity does not, ipso facto, act in a nonwillful manner. Under the slayer statute a slayer must act with intent and design. In contrast, the insanity defense encompasses acts in which the slayer can intentionally kill without necessarily understanding the consequences and the traditional test of being unable to perceive the nature and quality of the act committed. The trial court must determine whether the delusions suffered by Joshua Hoge are such that he did not designedly and intentionally kill his mother and stepbrother. Here, the trial court determined that Hoge acted willfully, using the modern criminal code's definition of willful, which requires nothing

more than knowledge. Hence, we must remand to the trial court to apply the appropriate legal standard to the facts.

## FACTS

¶2 On June 23, 1999, Pamela Kissinger and her son James Zachary Kissinger were killed by Kissinger's eldest son, Joshua Hoge. Hoge was charged with two counts of first degree murder and one count of first degree assault (for assaulting another occupant of the house). On January 13, 2000, Hoge was found not guilty by reason of insanity. He was committed to Western State Hospital, where he remains.

¶3 Hoge has a long history of serious mental illness. He has been in and out of mental institutions since he was a teenager and has been diagnosed with chronic paranoid schizophrenia. Hoge has also been diagnosed with Capgras syndrome, a psychotic illness in which a person believes certain people in his life are imposters. The Capgras syndrome was the possible motivating factor in his killing of his mother and half brother.

¶4 The stipulated facts included a portion of the psychiatric evaluation by Dr. Gregory Leong, the State appointed expert in the murder case. The evaluation noted that paranoid themes dominated Hoge's delusions and this paranoia included a longstanding misidentification delusion that his mother had "been replaced by a physically identical . . . individual. This delusionally held Capgras object is viewed . . . with a combination of hostility and fear."

¶5 The trial court here concluded as a matter of law that Hoge killed Kissinger willfully under the modern criminal code definition of that term.[1] The trial court further concluded that the killing was unlawful as it was a homicide and neither justifiable nor excusable. Based on those conclusions, the trial court held the slayer statute prohibited

---

[1] RCW 9A.04.090 and 9A.08.010(4).

Hoge from sharing in the proceeds of the settlement of the wrongful death claim arising from the death of Kissinger. Hoge appeals, alleging that the killing was neither unlawful nor willful.

## ANALYSIS

■ ¶6 Washington's slayer statute is designed to prevent a slayer who commits a homicide from acquiring any property or receiving any benefit resulting from the death of the decedent.[2] A "slayer" is defined as "any person who participates, either as a principal or an accessory before the fact, in the *willful and unlawful* killing of any other person."[3] In such cases, the slayer is deemed to predecease the decedent and is thus ineligible to share in the proceeds of the decedent's estate.

■ ¶7 By its terms, the statute requires proof that the slaying was both willful and unlawful. Hoge argues that the determination of not guilty by reason of insanity completely absolves him of any criminal liability. That may be true, but "[a] criminal conviction is not a sine qua non to application of the slayer's act."[4] The slayer statute is not penal. It is to be construed broadly to effect the state's policy that no person shall be allowed to profit by his own wrongdoing.[5]

¶8 As a matter of law, a homicide is an unlawful act unless it is excusable or justifiable.[6] The criminal code defines what defenses make a homicide lawful, and insanity is not one of them.[7] Thus, the killing of Kissinger is unlawful for purposes of the slayer statute.

---

[2] RCW 11.84.020.

[3] RCW 11.84.010(1) (emphasis added).

[4] *Leavy, Taber, Schultz & Bergdahl v. Metro. Life Ins. Co.*, 20 Wn. App. 503, 507, 581 P.2d 167 (1978).

[5] RCW 11.84.900.

[6] *Cook v. Gisler*, 20 Wn. App. 677, 683, 582 P.2d 550 (1978).

[7] RCW 9A.32.010 ("Homicide is the killing of a human being by the act . . . and is either (1) murder, (2) homicide by abuse, (3) manslaughter, (4) excusable homicide, or (5) justifiable homicide.").

■ ■ ¶9 Hoge argues that his act cannot be deemed willful because he could not form the requisite intent. In *New York Life Insurance Co. v. Jones*,[8] the Supreme Court defined willfully for purposes of the slayer statute to mean "intentionally and designedly." The court stated:

> Willfully means intentionally and designedly. *State v. Russell*, 73 Wn.2d 903, 442 P.2d 988 (1968); *State v. Spino*, 61 Wn.2d 246, 377 P.2d 868 (1963); *Webster's Third New International Dictionary* 2617 (1968). *See* 45 *Words and Phrases* 313-28 (perm. ed. 1970). The authorities collected there show that this meaning attaches to the word, whether it is used in civil or criminal statutes.[9]

The court held that a plea of guilty to second degree felony murder is sustainable without proof that the killing was intentional. Therefore, a plea of guilty to such a charge did not admit that the killing was willful. However, in holding summary judgment inappropriate, the court noted that the secondary beneficiaries were still entitled to show that the slayer intended to kill the person she had assaulted. In making such a showing, the beneficiaries would be "aided by the presumption that a person is presumed to have intended the usual and ordinary consequences of his acts."[10] The *Jones* court has established a mens rea requirement for the slayer statute. The question then is to what extent Hoge's "insanity" interfered or prevented him from forming the intent to kill. On this limited record we simply cannot tell.

¶10 Here, the trial court applied the definition of "willfulness" set forth in the modern criminal code rather than the standard enunciated by the Supreme Court in *Jones*. The criminal code defines "willfulness":

> Requirement of Wilfulness Satisfied by Acting Knowingly. A requirement that an offense be committed wilfully is satisfied if

---

[8] 86 Wn.2d 44, 47, 541 P.2d 989 (1975).

[9] *Jones*, 86 Wn.2d at 47.

[10] *Jones*, 86 Wn.2d at 48. We note the apparent inconsistency between this later dicta and the court's holding.

a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears.[11]

"Knowledge" is further defined in the criminal code:

KNOWLEDGE. A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.[12]

¶11 Under the modern criminal code, one who acts willfully may in fact have acted with less mens rea than one who acts with design and intent. As the law of this state, the Supreme Court's definition of "willfully" in *Jones* is the applicable standard. We are then left with the question of the degree to which Hoge's delusion prevented him from forming the intent to kill. This factual determination is best left to the trial court and further psychiatric evidence. Therefore, we remand for further proceedings in accordance with this decision.

ELLINGTON and DWYER, JJ., concur.

Review granted at 164 Wn.2d 1013 (2008).