

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **NOV 1 4 2019**

_____ for _____
CHIEF JUSTICE

This opinion was
filed for record
at 8 a.m. on Nov 14 2019

Susan L. Carlson
**Susan L. Carlson**
**Supreme Court Clerk**

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| FIRST STUDENT, INC., | ) | No. 96694-0 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) | |
| Respondent. | ) | Filed **NOV 1 4 2019** |

JOHNSON, J.—This case involves an issue of statutory interpretation regarding the applicability of a tax classification. First Student Inc., a school bus contractor, seeks reversal of a Court of Appeals decision affirming a summary judgment dismissal of its business and occupation (B&O) tax refund action. At issue is whether First Student's transportation of students qualifies as transporting persons "for hire" such that it is subject to the public utility tax (PUT), under RCW

82.16.010(6) and (12), rather than the general B&O tax, under RCW 82.04.290(2).[1]

We affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL HISTORY

First Student is a registered Washington business that owns and operates school buses. These buses are primarily used to provide transportation services for schoolchildren through contracts with various school districts. Since First Student registered as a business in 1990, it has consistently reported its income under the B&O tax classification, as specified in WAC 458-20-180. In 2013, First Student requested a letter ruling from the Department of Revenue (Department) contending that First Student should have been taxed under the PUT rather than the B&O tax. The Department declined to change its interpretation that school buses are subject to the B&O tax and not the PUT, an interpretation that has evidently remained consistent for more than 70 years.

First Student submitted refund requests to the Department for B&O taxes paid regarding its school bus services provided to school districts for the time period between December 1, 2008 and December 31, 2014. The Department

---

[1] The B&O tax statute has been amended between 2008 and 2014, the taxing periods for which First Student seeks refunds. Where there has been no change in the relevant language, we cite to the current version of the statute.

denied the refund requests, and First Student appealed through the administrative review process, ultimately resulting in a denial of First Student's refund request.

First Student filed an appeal of the administrative decision in superior court and moved for summary judgment, seeking a determination that First Student's provision of transportation services to school districts was taxable under the PUT rather than the B&O tax; the Department requested summary judgment, seeking the opposite relief. The trial court found no genuine issues of material fact and granted summary judgment in favor of the Department, denying First Student's motion for summary judgment. First Student appealed.

The Court of Appeals affirmed the trial court and, in its analysis, consulted dictionary definitions in existence at the time of enactment of the statutes for the ordinary meaning of "for" and "hire" and consulted a 1951 *Black's Law Dictionary* entry for the technical meaning of "for hire or reward," concluding the meaning of "for hire" was ambiguous. *First Student, Inc. v. Dep't of Revenue*, 4 Wn. App. 2d 857, 423 P.3d 921 (2018). In resolving this ambiguity, the Court of Appeals afforded deference to the long-standing Department interpretation that school bus operators were excluded from the PUT and properly taxed under the B&O tax. We granted review. *First Student, Inc. v. Dep't of Revenue*, 193 Wn.2d 1001, 438 P.3d 129 (2019).

ANALYSIS

Our review of a trial court's legal conclusions in a tax refund action is de novo. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000). When interpreting statutes, we derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments to the provision, and the statutory scheme as a whole. *Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 631, 334 P.3d 1100 (2014). A statutory provision is ambiguous when it is fairly susceptible to two or more reasonable interpretations. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002).

The goal of construing statutory language is to carry out the intent of the legislature; in doing so, we avoid strained, unlikely, or unrealistic interpretations. *Simpson*, 141 Wn.2d at 148, 149. Unless the statute expresses a contrary intent, we may resort to an applicable dictionary definition to determine the plain and ordinary meaning of a word that is not otherwise defined by the statute. *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). When "'the legislature uses a term well known to the common law, it is presumed that the legislature intended [it] to mean what it was understood to mean at common law.'" *Ralph v. Dep't of Nat. Res.*, 182 Wn.2d 242, 248, 343 P.3d 342

(2014) (quoting *N.Y. Life Ins. Co. v. Jones*, 86 Wn.2d 44, 47, 541 P.2d 989

(1975)).

Generally, Washington's B&O tax applies to the act or privilege of engaging

in business activities. RCW 82.04.220. Business activities not explicitly taxed

elsewhere in the statutory scheme are subject to the general statutory tax rate.

RCW 82.04.290(2). However, PUT businesses are not subject to the B&O tax, and

the tax rate differs for those businesses. RCW 82.04.310(1).

The businesses of "motor transportation" and "urban transportation" are

subject to the PUT. Under the PUT, "[t]here is levied and . . . collected from every

person a tax" for the privilege of engaging in defined businesses, with a tax rate of

0.6 percent for "[u]rban transportation business[es]" and a tax rate of 1.8 percent

for "[m]otor transportation . . . businesses." Former RCW 82.16.020(1)(d), (f)

(2011).

"Motor transportation business" is defined in relevant part as "the business

(except urban transportation business) of operating any motor propelled vehicle by

which persons or property of others are conveyed for hire." RCW 82.16.010(6).[2]

---

[2] RCW 82.16.010 was amended between 2008 and 2014 and again in 2015. LAWS OF 2015, 3d Spec. Sess., ch. 6 § 702; LAWS OF 2010, ch. 106, § 224 (expired June 30, 2013); LAWS OF 2009, ch. 535, § 1110; LAWS OF 2009, ch. 469, § 701 (expired June 30, 2013). These amendments were specific to log transportation businesses and do not offer insight as to the meaning of conveying people "for hire." As such, we cite the current version of the statute.

"Urban transportation business" is defined in relevant part as "the business of operating any vehicle for public use in the conveyance of persons or property for hire." RCW 82.16.010(12) (the definition also requires the operation be entirely within a city or town or occur between cities or towns no more than five miles apart). "For hire" is not defined, in whole or in part, within chapter 82.16 RCW. The meaning of the term "for hire" is the focal point of the dispute in this case.

In its administration of RCW 82.16.010, the Department adopted a regulation in 1970 excluding school buses from the definitions of "motor transportation business" and "urban transportation business." WAC 458-20-180. This WAC adopted and continued the Washington State Tax Commission's previous classification that excluded school buses from these PUT definitions. *Compare* Wash. State Tax Comm'n Rules and Regulations, Rule 180 (1956), *with* WAC 458-20-180.[3] This interpretation has remained unchanged and had remained unchallenged since its adoption in 1943. Instead of directly challenging the validity of WAC 458-20-180 under the Administrative Procedure Act,[4] ch. 34.05 RCW, First Student asserts that the Department's regulatory exclusion of school buses

---

[3] The Tax Commission was abolished in 1967 and largely replaced by the Department of Revenue. *See* LAWS OF 1967, Ex. Sess., ch. 26, § 7.

[4] Under Washington's Administrative Procedure Act, "[t]he burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).

from the PUT definitions of "motor transportation business" and "urban transportation business" is contrary to the plain language of RCW 82.16.010; First Student contends this language is unambiguous.

The Court of Appeals rejected First Student's arguments as to ambiguity, finding the meaning of "for hire" to be ambiguous. The court concluded that it was unclear whether the legislature intended the term "for hire" to be given its ordinary or technical meaning. It concluded that the ordinary meaning of the term "for hire" could be understood as "effecting the engagement or purchase of labor or services for compensation or wages," while the technical meaning, derived from a *Black's Law Dictionary* entry for "for hire or reward," contemplated the passengers being directly responsible for any compensation paid. *First Student*, 4 Wn. App. 2d at 867, 868. While the court noted that the technical definition of "for hire" could not be harmoniously applied to other enterprises defined in RCW 82.16.010 that do not transport people, this lack of harmony is present only when the term is defined without regard to its surrounding context; yet, the term "for hire" is not amenable to a mechanical definition separated from its surrounding context.

The variability and inherent ambiguity the term "for hire" can have is illustrated in *Allen v. City of Bellingham*, 95 Wash. 12, 163 P. 18 (1917). *Allen* involved the regulation of jitney buses, which were similar to modern day buses, charging individuals a small fare to ride between fixed points. Despite concluding

the ordinance in question was a valid regulation of jitney buses, which were defined by the subject ordinance as "used in the occupation of *carrying persons for hire*," this court stated that a jitney bus differed from a taxicab because the jitney bus "is *never for hire* at all; all that is offered is a seat and an opportunity to ride to some point within the limit of its operations." *Allen*, 95 Wash. at 15, 32 (emphasis added). This differing usage of the term "for hire" shows that the meaning of the term "for hire" cannot be separated from its surrounding context.

While there is no "for hire" entry in ordinary dictionaries existing at the time of the statutory amendments, definitions exist for both "for" and "hire." "For" has many potential definitions, each depending on the surrounding context; it was defined in relevant part as

> **2.** Indicating the end with reference to which anything acts, serves, or is done; as: **a** As a preparation towards, against, or in view of; having as goal or object; in order to be, become, or act as; to serve as, or as part of; to supply the need of; in order to effect; as, one dresses *for* dinner; he has enlisted *for* a soldier; built *for* a church; only wild game *for* food; he labored *for* the good of humanity. . . .
>
> . . . .
>
> **e** So as to secure or conduce to, in the way of result; conducive to; as, it is all *for* your benefit; to act *for* the wisest.

WEBSTER'S NEW INTERNATIONAL DICTIONARY 984 (2d ed. 1954); WEBSTER'S NEW INTERNATIONAL DICTIONARY 984 (2d ed. 1934).

"Hire" was defined in relevant part as

**1.** The price, reward, or compensation paid, or contracted to be paid, for the temporary use of a thing or a place, for personal service, or for labor; pay; reward; in its general sense, pay for the use of anything, including wages, rent, and formerly interest; in specific sense, recompense paid for the use of a chattel other than money or for services.

WEBSTER'S, *supra*, at 1182 (1954); WEBSTER'S, *supra*, at 1182 (1934).

The ordinary definition of conveying persons "for hire" could have been understood to have meant conveying persons in order to effectuate compensation for personal service or labor *or* conveying persons so as to secure or conduce compensation for personal service or labor. Neither definition details whether the passenger must pay for the transportation. As such, we next turn to the technical definition under the common law.

Differing definitions also exist under the common law, as evidenced in out-of-state cases. First Student cites out-of-state cases, arguing that "for hire" is nearly synonymous with "for compensation" in the context of transporting passengers, asserting that it is immaterial who provides the compensation. *See, e.g., Surface Transp. Corp. of N.Y. v. Reservoir Bus Lines, Inc.*, 271 A.D. 556, 560, 67 N.Y.S.2d 135 (1946); *Short Line, Inc. v. Quinn*, 298 Mass. 360, 362, 10 N.E.2d 112 (1937). The Department similarly cites out-of-state cases that have distinguished school buses from "for hire" vehicles, though these cases may not be analogous to the

present case. *See, e.g., Gibson v. Bd. of Educ.*, 68 A.D.2d 967, 414 N.Y.S.2d 791

(1979); *Durham Transp. Inc. v. Valero,* 897 S.W.2d 404 (Tex. 1995). The

Department also cites a *Black's Law Dictionary* definition for the meaning of "for

hire or reward," which defines the term as

> [t]o transport passengers or property of other persons than owner or
> operator of the vehicle for a reward or stipend, to be paid by such
> passengers, or persons for whom such property is transported, to
> owner or operator. *Michigan Consol. Gas Co. v. Sohio Petroleum Co.,*
> 32 N.W.2d 353, 356, 321 Mich. 102 [1948].

BLACK'S LAW DICTIONARY 773 (4th ed. 1951). Washington common law does not

explicitly define the term "for hire," but our cases suggest that the passenger must,

in some way, effectuate the compensation for transportation. *See, e.g., Klopfenstein*

*v. Eads,* 143 Wash. 104, 107, 254 P. 854, 256 P. 333 (1927) (reasoning that an

individual was not a "passenger for hire" because the record failed to show the

passenger "paid, or expected to pay, for his own transportation"), *overruled on*

*other grounds by Roberts v. Johnson*, 91 Wn.2d 182, 588 P.2d 201 (1978);

*Peterson v. Seattle Traction Co.*, 23 Wash. 615, 645, 63 P. 539, 65 P. 543 (1900)

(noting that an employee was a "passenger for hire" if the transportation was given

as part consideration for his services). While First Student's school buses would

convey persons "for hire" if the term merely meant to transport people for

compensation, it would not meet the definition of "for hire" under *Black's*

definition because the students being transported do not pay First Student.

These differing definitions fail to establish the legislature's understanding of the term "for hire" at the time of the amendments to the PUT. Rather, these competing interpretations lead us to conclude, as did the Court of Appeals, that "for hire" is ambiguous as used in RCW 82.16.010(6) and (12).

We next turn to the context of chapter 82.16 RCW as a whole, but it offers little to aid in ascertaining legislative intent. The legislature added the term "for hire" to "urban transportation" in 1943 and to "highway transportation" in 1955, but it did not provide a definition for the term "for hire" in either amendment. LAWS OF 1943, ch. 156, § 10A(j)(2); LAWS OF 1955, ch. 389, § 28(9). The term "highway transportation" was later changed to "motor transportation" in 1961. LAWS OF 1961, ch. 293, § 12(9). Another use of the term "for hire" in the context of transporting passengers under RCW 82.16.010 is in the statutory definition for "railroad business," which, similar to "urban transportation business," was defined in relevant part as "for public use in the conveyance of persons or property for hire." RCW 82.16.010(8). This tells us little, either way, whether the legislature intended to change the long-standing tax classification.

First Student, however, asserts that the 1955 amendment adding the term "for hire" is evidence of legislative intent to expand the definition to include all businesses that had previously been excluded under the definition of "auto transportation company." This is far from clear in that "auto transportation

11

company" continued to be referenced as an example of conveying people "for hire," and the definition of that term explicitly excluded school buses at the time the term "for hire" was added. LAWS OF 1935, ch. 120, § 1(d) ("*Provided,* That the term 'auto transportation company,' as used in this act, shall not include corporations or persons . . . in so far as they own, control, operate or manage . . . school buses."). No dispute appears to exist that school buses were properly taxed under the B&O tax prior to "for hire" being added to the PUT definitions.

Nothing is found in the legislative history or elsewhere to support First Student's argument that the legislature intended to change the tax classification of school buses with the "for hire" amendments. However, as support for the classification of school buses under the B&O tax, in interpreting an ambiguous statute, we will afford agency interpretations that are within an agency's special expertise great weight. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004). We also have previously recognized that "interpretive rules and regulations promulgated by the tax commission are entitled to great weight in resolving doubtful meanings of taxing laws." *Pringle v. State,* 77 Wn.2d 569, 573, 464 P.2d 425 (1970). The Department is charged with the administration of the B&O tax and the PUT, and the Tax Commission operated under a similar charge before the creation of the Department. RCW 82.32.300; LAWS OF 1935, ch. 180, § 208.

Here, a long-standing agency interpretation excluding school buses from the PUT definitions exists from the time the term "for hire" was first added in the 1943 amendments. This interpretation had remained unchallenged until the present case. Shortly after "for hire" was added to each of the PUT definitions, the Tax Commission revised rule 180, continuing to treat school buses as excluded from the PUT and subject to the general B&O tax.

When the PUT was initially enacted in 1935, it included "highway transportation business" and "urban transportation business." LAWS OF 1935, ch. 180, § 37(i), (j). In 1943, the legislature amended the definition of "urban transportation business" to include "for public use in the conveyance of persons or property for hire." LAWS OF 1943, ch. 156, § 10A(j)(2). Following this change, in 1943, the Tax Commission revised rule 180, specifically indicating that school buses were subject to the B&O tax. Wash. State Tax Comm'n Rules and Regulations, Rule 180 (1943). In 1955, the legislature amended the definition of "highway transportation business" to include "by which persons or property of others are conveyed for hire." LAWS OF 1955, ch. 389, § 28(9). In 1956, the Tax Commission amended the rule continuing to exclude school buses. Wash. State Tax Comm'n Rules and Regulations, Rule 180 (1956). The Department's adoption of WAC 458-20-180 continued this exclusion.

First Student argues the historical interpretations have not always been consistent because the Tax Commission used the phrase "[p]ersons operating school buses for hire" in the 1943 version of rule 180. Wash. State Tax Comm'n Rules and Regulations, Rule 180 (1943). This does not mean that the term "for hire" is unambiguous as used but, instead, is further evidence that the term is ambiguous. Further, even if we assume this phrase is evidence of inconsistent usage of the term "for hire" by the Tax Commission, the tax classification of school buses has remained consistent. School buses have consistently been excluded from the PUT.

A licensing scheme that existed at the time of the amendments provided that school buses were not "for hire" vehicles, as was noted in a formal Washington State attorney general opinion. "No charge may be made of the passengers. School buses are licensed upon a tax-exempt basis under RCW 46.16.020. To charge a fare would cause such vehicles to acquire a 'for hire' status as defined by RCW 46.04.190." 1956 Op. Att'y Gen. No. 242, at 4. While the attorney general opinion relates to a licensing scheme under former chapter 46.16 RCW (1956) and does not directly relate to the PUT definitions, the opinion offers insight into how school buses were viewed in the broader statutory context. Throughout this historical context, school buses have remained classified under the B&O tax.

Further, some evidence of legislative acquiescence is present here as well. When an agency adopts a WAC interpreting a statute, repeated reenactment of the statute without repudiating the interpretation in the WAC is evidence of legislative acquiescence, though it is only a factor to be considered. *See Pringle*, 77 Wn.2d at 573. The contemporaneous construction of a statute by officials charged with its enforcement is entitled great weight, "especially where the Legislature has silently acquiesced in that construction over a long period." *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995). Since 1956, the legislature has amended the definition section of chapter 82.16 RCW 18 times without disturbing the Tax Commission's contemporaneous interpretations that school buses are excluded from the PUT definitions. The lengthy period of legislative silence and repeated reenactments support the exclusion of school buses from the PUT definitions.

## CONCLUSION

We find the meaning of "for hire" is ambiguous as used in the PUT definitions of "motor transportation business" and "urban transportation business." We resolve this ambiguity in favor of the long-standing interpretation that school

buses are excluded from the definitions of "motor transportation business" and "urban transportation business" under RCW 82.16.010(6) and (12). We find that WAC 458-20-180 is a valid interpretation of the statute. We affirm the Court of Appeals.

WE CONCUR: